## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**RHONDA TURNER,**
       **Plaintiff,**

**v.**                                    **Case No. 3:10cv530/LC/CJK**

**MICHAEL ASTRUE,**
**Commissioner of Social Security,**
       **Defendant**.

---

### REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b), and NORTHERN DISTRICT OF FLORIDA LOCAL RULES 72.1(A), 72.2(D), and 72.3, relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. §§ 401-1400v.  The case is now before the court pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying claimant's applications for disability insurance benefits under Title II of the Act,  42 U.S.C. §§ 401-34, and for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-83.

Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are supported by substantial evidence.  The decision of the Commissioner, therefore, should be affirmed.

PROCEDURAL HISTORY

On March 4, 2008, Rhonda D. Turner (who will be referred to by name, as plaintiff, or as claimant) protectively filed applications for disability insurance benefits and supplemental security income, alleging disability beginning June 1, 2006.   T. 107-13, 114-20.   The applications were denied initially and on reconsideration. T. 51-60, 67-70.[1]  Claimant filed a written request for hearing, which was held before an administrative law judge ("ALJ") on November 20, 2009.  T. 71-72.  Plaintiff appeared and testified at the hearing; Sheila G. Justice, an impartial vocational expert, also appeared at the hearing.  T. 24-50.  In a decision dated December 7, 2009, the ALJ denied claimant's applications for disability insurance benefits and supplemental security income, finding Ms. Turner had not been under a disability within the meaning of the Act from June 1, 2006, through the date of the decision.  T. 12-19.  The Appeals Council of the Social Security Administration denied plaintiff's request for review in a notice dated October 28, 2010. T. 1-5.  The ALJ's decision thus stands as the final decision of the Commissioner and is now subject to review in this court pursuant to § 1383(c) of the Act.

## FINDINGS OF THE ALJ

In her written decision the ALJ made several findings relative to the issues raised in this appeal:

1.  Claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.  Claimant has not engaged in substantial gainful activity since June 1, 2006, the alleged onset date.

---

[1] The administrative record, as filed by the Commissioner, consists of 11 volumes (doc. 9 through 9-10), and has 426 consecutively numbered pages.  References to the record will be by "T." for transcript, followed by the page number.

3.   Claimant has the following severe impairments: obesity, sciatica, and hypertension.

4.   Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.   Claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except only occasional climbing ramps and stairs, bending, stooping, kneeling, crouching, and crawling; and no climbing ropes, ladders, and scaffolds.

6.   Claimant is unable to perform any past relevant work.  Claimant was born on December 24, 1966, and was 39 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date.  Claimant has at least a high school education and is able to communicate in English.

7.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled," whether or not claimant has transferable job skills.

8.   Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform.

9.   Claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2006, through the date of the administrative decision.

## STANDARD OF REVIEW

"Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a

result of the application of proper legal standards." *Olds v. Astrue*, No. 5:09cv319/RS/EMT, 2011 WL 691595, at *1 (N.D. Fla. Jan. 19, 2011); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary[.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1.  If the claimant is performing substantial gainful activity, she is not disabled.

2.  If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.  If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.  If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.  Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  *See* 20 C.F.R. § 404.1512.  "If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform."  *Olds*, 2011 WL 691595, at *2.  "If the Commissioner carries this burden, the claimant must then prove [she] cannot perform the work suggested by the Commissioner."  *Id.*

<u>FACT BACKGROUND AND MEDICAL HISTORY</u>[2]

Plaintiff was born on December 24, 1966, making her 41 years of age on March 4, 2008, the date the applications were filed.  T. 28.  Claimant completed one year of college and a certified nursing assistant program, and is able to communicate in

---

[2] Although intended to be thorough, and to provide an overview of claimant's history of care and treatment, this synopsis of medical evidence will be supplemented as called for in the Analysis section.

English.  T. 30, 136-37.  Alleging disability beginning June 1, 2006, plaintiff cites a history of low back and knee pain, sciatica, hypertension, and numbness in her right lower extremity.  Claimant reported past work experience as a certified nursing assistant.  T. 133.

Plaintiff injured her back while working as a certified nursing assistant in 2004. T. 411.  Following that incident, Ms. Turner was seen in the emergency room complaining of lower back and radicular right knee pain.  T. 291-98.  From October 2006 through September 2008, claimant was treated at the Escambia Community Clinic.  Upon examination, right knee and lumbar and sacral spine tenderness were noted at times.  T. 255, 246, 243, 240, 336.  Paraspinous muscle spasm, pain with back movement and flexion, and pain with right knee movement were also observed, but without consistency.  T. 255, 243, 271, 332, 325, 322, 319.  Full range of motion without pain was more typically noted.  T. 322, 319.  Claimant was prescribed Robaxin and pain medication.  T. 267, 270-71.

From December 2008 through April 2009, plaintiff was treated by Dr. P.K. Garg, M.D.  T. 341-54.  On December 31, 2008, Dr. Garg noted right knee and lumbar and sacral spine tenderness, in addition to "mildly limited" decreased range of motion secondary to pain.  T. 354.  X-rays of claimant's lumbar spine and right knee returned negative on January 2, 2009.  T. 287-88.  Dr. Garg assessed hypertension and back and right knee pain on January 8, 2009, and prescribed Lortab. T. 353.  On February 24, 2009, Dr. Garg ordered an MRI of the right knee and lumbar spine.  T. 350.  The results of the right knee MRI were negative, but the MRI of the lumbar spine showed a central disc bulge and facet degenerative changes at L5-S1

resulting in mild spinal canal narrowing and mild to moderate bilateral neuroforaminal narrowing.  T. 348-49.

Complaining of "moderate" low back pain that radiated to the right thigh and posterior leg, plaintiff was examined by Dr. Kelli T. Wells, M.D., on June 2, 2009. T. 374-75.  Dr. Wells completed a musculoskeletal exam, the results of which were normal. T. 377.  Assessing lumbar region disc disorder, Dr. Wells recommended pain management.  T. 377.  Ms. Turner also began treatment with Dr. Minh C. Pham, M.D., a primary care physician, in June 2009.  Upon initial examination, Dr. Pham noted chronic back pain, low back stiffness, and numbness in the lower extremities. Dr. Pham diagnosed chronic back pain, disc protrusions to the lumbar spine, radiculopathy, and spinal stenosis.  T. 367.  In his July 8, 2009, treatment notes, Dr. Pham assessed hypertension, chronic back pain, degenerative joint disease, and obesity.  T. 358-59.  On August 22, 2009, Dr. Pham diagnosed, *inter alia*, degenerative disc disease.  T. 369.

Claimant presented to Dr. Pham on September 5, 2009, with complaints of pain and muscle spasms in the low back.  T. 370.  On October 22, 2009, Dr. Pham noted back pain and lower extremity numbness, and assessed chronic low back pain, disc protrusions at L5-S1, degenerative joint disease, and hypertension. T. 368. Dr. Pham completed a physical assessment of plaintiff's ability to do work-related activities on October 28, 2009.  T. 380-81.  Dr. Pham opined that Ms. Turner has the maximum ability to lift and carry less than ten pounds on a frequent basis (1/3 to 2/3 of an eight-hour day).  Claimant, according to Dr. Pham, has the maximum ability to stand and walk (with normal breaks) less than two hours and sit (with normal breaks) about two hours in an eight-hour day.  Dr. Pham found that plaintiff can sit 15 minutes and stand

only five minutes before changing position.  Furthermore, Dr. Pham asserted that Ms. Turner requires the opportunity to shift at will from sitting or standing/walking and will need to lay down at unpredictable intervals during an eight-hour workday.  T. 380.  Dr. Pham observed limitations in claimant's capacity for reaching (including overhead), fingering (fine manipulation), handling (gross manipulation), and feeling, concluding claimant "shouldn't work."  T. 381.

In September 2009, Dr. Pham referred plaintiff to an orthopedist, Dr. Carroll English, M.D.   T. 408-13.   Upon examination, Dr. English noted lower back tenderness, forward flexion to about 45 degrees, full range of motion in the right knee, and negative straight leg raising.  T. 412.  Dr. English observed that Ms. Turner was able to get off the examination table and squat fairly easily.  Diagnosing claimant with lumbago, Dr. English noted that she was not a likely surgical candidate and prescribed physical therapy to improve her range of motion.  T. 412-13.  Plaintiff underwent physical therapy in September and October 2009, and returned to Dr. English for a follow-up visit on November 3, 2009.  Ms. Turner reported that physical therapy had helped her back "a little."  T. 409.  Dr. English observed somewhat decreased range of motion with forward flexion and side-to-side bending due to a combination of pain and weight.  T. 409.

## HEARING BEFORE THE ALJ

The administrative hearing commenced on November 20, 2009, with the testimony of Ms. Turner, who stated that she is five foot six inches tall and weighs 340 pounds.  T. 29.  Claimant, who uses a cane to walk, is single and lives with her two children, ages seven and 15.  T. 28-30.  Claimant worked full-time as a certified nursing assistant with Pensacola Health Care for more than 15 years.  T. 34.

According to claimant, she stopped working on June 1, 2006, when she was terminated for insubordination.  T. 31.  She testified that she had received unemployment benefits as recently as the middle of 2009, but had not applied for employment since her termination in June 2006.  T. 31-32.  Regarding her medical care, Ms. Turner asserted that she had been seeing her primary care physician, Dr. Pham, since June 2009.  T. 32.  When asked what medical conditions prevent her from working, claimant cited back pain and sciatica, explaining that she has difficulty standing, bending, and lifting.  T. 33.  Plaintiff also complained of regular right knee pain, which is alleviated somewhat by medication.  T. 34-35.

Ms. Turner testified further that she cannot walk more than a block without having to stop and can stand for only five to ten minutes before the pain increases significantly.  T. 35-36.  Claimant, however, did not report any problems with sitting.  T. 36.  Plaintiff estimated that she can lift approximately five pounds, but cited no problems with her hands.  T. 36.  Ms. Turner asserted that she does the cooking, cleaning, and laundry, but does not do any yard work.  T. 36-37.  She drives a car, attends church regularly, and spends the average day cleaning the house and watching television.  T. 37-38.  In response to questioning from her attorney, plaintiff stated that after just one to two minutes of sweeping the house, she has to rest because of muscle spasms in the low back.  T. 40-41.  Ms. Turner testified that the muscle relaxer she takes makes her sleepy.  T. 43.

Upon the conclusion of claimant's testimony, the ALJ inquired of Sheila G. Justice, an impartial vocational expert, whether claimant can perform her past work:

> Ms. Justice, let's assume that I have an individual with the same work history as you've already described for Ms. Turner.  And assume further that I find the individual is limited in the following fashion.

> Lifting and carrying no more than 10 pounds, standing and walking no more than 30 minutes at a time and no more than two hours in an eight-hour workday. No restrictions on the ability to sit. No climbing ladders, scaffolds, ropes, things like that but can occasionally climb stairs and ramps, occasionally bend, stoop, kneel, crouch and crawl. With these restrictions, in your opinion could such an individual perform the work that Ms. Turner has done in the past?

T. 45-46. Ms. Justice responded that such an individual, functioning at the sedentary level, could not perform claimant's past relevant work, which is performed at the medium level. T. 46. The ALJ then asked Ms. Justice whether "there are any jobs in the region or in several regions in the country that an individual with the same work history as Ms. Turner, who is a younger individual with a high school education," can perform. Identifying order clerk, optical goods assembler, and call out operator, Ms. Justice testified that there are jobs available in the national economy that can accommodate claimant's medical and vocational profile. T. 46.

Altering the hypothetical to include a requirement that the individual change position "between sitting and standing as necessary," the ALJ again asked Ms. Justice to identify any jobs available for an individual with plaintiff's residual functional capacity and vocational background. T. 47. Ms. Justice responded that the aforementioned jobs would "allow the individual to stand as long as [she] didn't leave the workstation." T. 47. Finally, the ALJ asked Ms. Justice to consider a hypothetical based on Dr. Pham's physical assessment:

> If you have an individual who can lift and carry no more or less than 10 pounds a day, can stand and walk no more than, not even two hours a day, can sit about two hours a day. And those occupations all are less than 15 minutes at a time. And no more than occasional twisting and

climbing stairs and never stooping, crouching, or climbing ladders, no reaching or fingering, handling, or feeling, no work in temperature extremes, humidity, or environmental pollutants.   With those restrictions, would there be jobs available?

T. 47-48.  Considering the restrictions on sitting, standing, and reaching, Ms. Justice replied, there would be no jobs available in the national economy that such an individual could perform.  T. 48.

## ANALYSIS

Plaintiff raises one issue in this appeal, arguing that the ALJ failed to give appropriate weight to the disability opinions of her treating physician, Dr. Pham. (Doc. 11, 6)  Generally speaking, Ms. Turner maintains that the ALJ's decision should be reversed because, she contends, it is not supported by substantial evidence. (Doc. 11, 5)  In her written decision, the ALJ characterized Dr. Pham's opinion as "unpersuasive":  "Although a treating physician, he has only treated the claimant for a short time and the minimal objective findings from his examination do not support his very restrictive opinion."  T. 17.  Claimant, in effect, contends the ALJ failed to articulate good cause for discrediting the opinion of Dr. Pham.  (Doc. 11, 7)

"The opinion of a treating physician . . . 'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'"  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)).  "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Id.* at 1241.  "The ALJ must clearly

articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440.

Though perhaps not rigidly marshaling the prongs of its rationale, the ALJ's decision does in fact articulate adequate reasons for giving less weight to the opinion of Dr. Pham.  In determining claimant's residual functional capacity, the ALJ relied primarily on the lack of examination and diagnostic findings, which she described as "minimal."  T. 16.  As the ALJ recounted, January 2009 x-rays of plaintiff's lumbar spine and right knee returned negative.  T. 287-288.  The results of an April 2009 MRI of the right knee, ordered by Dr. Garg, were also negative.  In terms of diagnostic testing, only a contemporaneous MRI of the lumbar spine, which showed a central disc bulge and facet degenerative changes at L5-S1 resulting in mild spinal canal narrowing and mild to moderate bilateral neuroforaminal narrowing, revealed any significant evidence of pathology.  T. 348-49.

Multiple physical examinations also generated little in the way of abnormal clinical findings.  On June 2, 2009, Dr. Wells completed a musculoskeletal exam with unremarkable results, finding normal muscle strength, normal range of motion in the spine and extremities, and no spinal tenderness.  T. 377.  Dr. English, an orthopedist, noted lower back tenderness in September 2009, but full range of motion in the right knee and negative straight leg raising.  T. 412.  Observing that claimant could get off the examination table and squat fairly easily, Dr. English concluded that claimant was not a likely surgical candidate.  T. 412-13.  The court observes that "specialists' opinions on medical issues related to their area of specialty are generally given more

weight[.]"  *See Morrison v. Barnhart*, 278 F. Supp. 2d 1331, 1336 (M.D. Fla. 2003) (citing 20 C.F.R. § 404.1527(d)(5)).

The court also finds significant that Ms. Turner, through various treatments and therapies, experienced pain relief.  Notably, plaintiff reported some improvement in her back after attending physical therapy.  T. 409.  Moreover, the July 2008 treatment notes of Dr. Rogelio Samson, M.D., with the Escambia Community Clinic, reflect that plaintiff's back pain is "[c]ontrolled well with Lortab and Robaxin."  T. 321. Similarly, Ms. Turner reported to Dr. Wells in June 2009 that "the pain is alleviated by Lortab, rest, and muscle relaxants."  T. 374.  Claimant testified at the administrative hearing that her medications do "ease" the pain.  T. 34-35.

As the ALJ reflected, plaintiff's employment history further undermines the physical assessment offered by Dr. Pham.  T. 17.  Ms. Turner experienced the initial back injury in 2004, but continued to work until June 2006.  T. 411.  Claimant indicated in her hearing testimony that she stopped working in 2006, not due to her impairments, but because she was terminated for insubordination.  T. 31.  The ALJ did not, perhaps, directly confront Dr. Pham's ultimate conclusion that plaintiff "shouldn't work."  Nevertheless, and in the interest of a fair and comprehensive, as opposed to hyper-technical, analysis, the court observes that such an opinion on the ultimate question, a vocational, rather than medical, issue, is not entitled to deference. *See* SSR 96-5p, 1996 WL 374183, at *1-2 (July 2, 1996) (providing that a physician's opinion on an issue reserved to the Commissioner of Social Security, such as whether an individual is disabled, is never entitled to controlling weight or special significance).  In sum, "the ALJ is free to reject the opinion of any physician when

the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981).  Though she did not say so explicitly, the ALJ, by implication, found that Dr. Pham's opinion was not bolstered by the evidence and was inconsistent with his own medical records.  *See Phillips*, 357 F.3d at 1240.  Accordingly, the court concludes that the ALJ properly rejected that opinion as unpersuasive.

Assuming *arguendo* the ALJ failed to properly evaluate Dr. Pham's opinion, any such error was harmless.  *See, e.g.*, *Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011) (applying harmless error analysis to Social Security disability benefits claim); *Reeves v. Heckler*, 734 F.2d 519, 524 (11th Cir. 1984) (rejecting challenge to ALJ's conclusion as harmless error where ALJ had considered the relevant evidence in making the disability determination).   The court assigns considerable importance to the consistency between the residual functional capacity articulated by the ALJ, claimant's administrative hearing testimony, and the opinions of Dr. Pham.  The ALJ found that plaintiff has the residual functional capacity to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), except only occasional climbing ramps and stairs, bending, stooping, kneeling, crouching, and crawling.  T. 15.  According to the current regulations, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  *See* 20 C.F.R. § 404.1567(a).

In his physical assessment of claimant's ability to do work-related activities, Dr. Pham determined that claimant has the maximum ability to lift and carry less than ten pounds on a frequent basis, sit for about two hours (with normal breaks) during an eight-hour day, and stand and walk for less than two hours during an eight-hour

day.   Dr. Pham also concluded that plaintiff is limited in reaching, fingering, handling, and feeling.  T. 380-381.   Dr. Pham's opinions, however, are contradicted in material respects by Ms. Turner herself, who testified that she has no difficulty sitting, and regularly drives, attends church, cooks, cleans, and does the laundry.  T. 36-37.  Moreover, neither the court, nor plaintiff herself, has identified any medical evidence of record to support the very restrictive limitations Dr. Pham advocated in relation to claimant's capacity for physical functions like reaching and fine and gross manipulation.  To the extent claimant can sit without difficulty and use her upper extremities to perform various activities of daily living, the residual functional capacity articulated by the ALJ can be reconciled with Dr. Pham's physical assessment.  In other words, Dr. Pham's assessment, as properly modified by the relevant evidence of record, does not exclude the possibility of sedentary work.  As a result, the court determines that any error in the evaluation of Dr. Pham's opinions was harmless.

As explained above, the ALJ identified good cause for not giving considerable or substantial weight to the opinions of plaintiff's treating physician.  *See Phillips*, 357 F.3d at 1240.  In making that determination, the ALJ sufficiently articulated the reasons for giving less weight to Dr. Pham's assessments and thus adhered to the prevailing legal standard.  *See Lewis*, 125 F.3d at 1440.  Where, as here, the ALJ has conducted a thorough examination of the record and properly considered claimant's medical condition as a whole to reach a determination supported by substantial evidence, this court may not reverse the Commissioner's decision.  *See Carnes*, 936 F.2d at 1218 ("[T]his Court may reverse the decision of the [Commissioner] only

when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").

Accordingly, it is respectfully RECOMMENDED:

The applications for disability insurance benefits and supplemental security income be DENIED.

At Pensacola, Florida, this 12th day of December, 2011.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).